IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18CV623-GCM

| | | |
|---|---|---|
| MICHELLE FAIRCHILD, individually, and as Executrix of the estate of JEFFREY FAIRCHILD, | ) ) ) | |
| Plaintiffs, | ) ) | |
| Vs. | ) ) | ORDER |
| DANIEL JAMES FAIRCHILD and PRIMERICA LIFE INSURANCE COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the Court upon Defendant Daniel James Fairchild's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. This matter is fully briefed and ripe for disposition.

I.   **FACTUAL BACKGROUND**

This case arises from a dispute between a deceased insured's wife and brother over life insurance proceeds and a mutual fund. The Amended Complaint alleges that Daniel Fairchild ("Daniel"), the decedent Jeffrey Fairchild's ("Jeffrey") brother, is a sales agent for Primerica Life Insurance Company ("Primerica"). (Amd. Compl. ¶ 4). Jeffrey purchased life insurance policy number 0489699134 (the "Policy") from Primerica through his brother Daniel. (*Id*. at ¶ 8). At the time Jeffrey purchased the life insurance policy, he designated his wife, Michelle Fairchild ("Michelle"), as the beneficiary of his coverage under the Policy. (*Id*.) Jeffrey also had a life insurance policy through his employer, Smarte Carte, Inc. (*Id*. at ¶ 11).

Jeffrey suffered from a debilitating mental illness which deteriorated to the point that he was involuntarily committed. (*Id.* at ¶¶ 15-16). Plaintiffs allege that during this time Jeffrey was

1

incompetent and unable to manage his affairs and that Daniel told Jeffrey he would assist him with his financial affairs. (*Id.* at ¶¶ 17, 46).  The Amended Complaint alleges that during this time, unbeknownst to Michelle, Daniel cashed out a mutual fund owned by Jeffrey and Michelle. (*Id*. at ¶ 32).

Plaintiff Michelle formally separated from Daniel on July 1, 2018. (*Id.* at ¶ 6).  Plaintiffs allege that Daniel either completed and submitted change of beneficiary forms for the Primerica and Smarte Carte policies without Jeffrey's knowledge, designating himself rather than Michelle the primary beneficiary of Jeffrey's coverage, or that he unduly influenced Jeffrey to make the changes. (*Id*. at ¶¶ 22, 25). Right after the change in beneficiary was effectuated, Daniel sent an email to Michelle in which he informed her that Jeffrey cancelled all the life insurance policies, "includ[ing] all the kids' policies and your policy." (Doc. No. 29-2).  Plaintiffs allege this email concealed the fact that Daniel was now listed as beneficiary on the Primerica and Smarte Carte policies and was sent to prevent Michelle from learning of his actions. (Amd. Compl. ¶¶ 28-29).

Jeffrey died on August 6, 2018. (*Id.* at ¶ 7). On August 8, 2018, Daniel signed, and subsequently submitted, a Claimant's Statement, by which he sought to be paid the proceeds of the Policy. In or around August 9, 2018, Plaintiff Michelle contacted Primerica and made a verbal claim for the proceeds on behalf of the Estate of Jeffrey Fairchild (the "Estate") and herself, representing that she was the beneficiary of the Policy.

Michelle was named as Executrix of Jeffrey's estate after his death and initiated this action.  Because there are two competing claims for the same death benefit, Primerica asserted an interpleader counterclaim and crossclaim and deposited the death benefit with the Court.[1] The proceeds of the Smarte Carte policy and mutual fund had already been collected by Daniel.

---

[1] Plaintiffs also sued Primerica but the Court has dismissed those claims pursuant to Rule 12(b)(6).

Michelle makes various claims against Daniel both in her individual capacity and as Executrix of Jeffrey's Estate. The Amended Complaint purports to allege ten claims for relief against Daniel: (1) fraud, (2) constructive fraud, (3) breach of fiduciary duty, (4) conversion, (5) unfair and deceptive trade practices ("UDTP"), (6) tortious interference with contract, (7) unjust enrichment, (8) punitive damages, (9) undue influence, and (10) lack of capacity. (*See id*. ¶¶ 44–128). Daniel has moved to dismiss each of these claims pursuant to Rules 12(b)(1) and 12(b)(6).

## II. DISCUSSION

### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In order to be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient. *Robinson v. Jewish Ctr. Towers, Inc*., 993 F. Supp. 1475, 1476 (M.D. Fla. 1998). The plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

In addition to his motion under Rule 12(b)(6), Daniel moves to dismiss certain of Michelle's claims pursuant to Rule 12(b)(1), arguing that Michelle lacks standing to assert any claims in her individual capacity that belong solely to the Estate.

**B. Fraud claim**

The first Cause of Action in the Amended Complaint is a claim for fraud brought by the Plaintiff Estate. To sufficiently plead a claim for fraud, a plaintiff must allege: (1) a false representation or concealment of a material fact, (2) that is reasonably calculated to deceive, (3) is made with intent to deceive, (4) and does in fact deceive, (5) resulting in damage to the injured party. *Ragsdale v. Kennedy*, 209 S.E.2d 494, 500 (N.C. 1974). Moreover, any reliance on the alleged false representations or omissions must have been reasonable. *Rider v. Hodges*, 804 S.E.2d 242, 248 (N.C. App. Ct. 2017). To meet the heightened pleading standard of Rule 9(b) for fraud, a plaintiff must describe "the time, place, and contents of the false representations." *Topshelf Mgmt, Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 725 (M.D.N.C. 2015); *see also* Fed. R. Civ. P. 9(b).

Plaintiff Estate's fraud claim appears to allege two false representations: (1) Daniel told Jeffrey that he would assist him with his financial affairs after he was committed (Amd. Compl. ¶ 46); and (2) Daniel lied to Michelle about the cancellation of the Primerica policy to attempt to conceal that fact that he was beneficiary of the Primerica and Smarte Carte policies. Nowhere in the Amended Complaint is there an allegation that Daniel did not assist in Jeffrey's financial affairs. In fact, the whole basis of this lawsuit is not that Daniel made a false representation of a material fact to Jeffrey, but rather that Daniel used his relationship with Jeffrey to take advantage of him and engage in self-dealing. These allegations are more in the nature of a claim of constructive fraud, which the Court addresses below. *See*, *e.g.*, *Terry v. Terry*, 273 S.E.2d 674,

4

678 (N.C. 1981) Plaintiff fails to state a claim for fraud. As the Estate is bringing this claim, any allegation of fraud in Daniel's email to Michelle in her individual capacity is likewise dismissed.

### C. Constructive Fraud and Breach of Fiduciary Duty

Both Plaintiffs allege claims for constructive fraud and breach of fiduciary duty. A claim for constructive fraud requires the existence of a fiduciary duty. *See White v. Consol. Planning, Inc.*, 603 S.E.2d 147, 156 (N.C. Ct. App. 2004) ("[A] cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured."). Likewise, "a claim for a breach of fiduciary duty has three elements: '(1) a showing of a fiduciary relationship, (2) thereby establishing a fiduciary duty, and (3) a breach of that duty.'" *In re KGC Homeowners, Inc.*, No. 16-01062-5-JNC, 2017 WL 3405509, at *4 (E.D.N.C. Aug. 8, 2017) (quoting *Dalton v. Camp*, 548 S.E.2d 704, 709 (N.C. 2001)).

Daniel argues that these claims must be dismissed because he owed no fiduciary duty to either Michelle or Jeffrey. Plaintiffs claim that such a duty exists based upon Daniel's status as their insurance agent as well as his family relationship. An insurance agent's fiduciary duty is limited to "procuring insurance for an insured, correctly naming the insured in the policy, and correctly advising the insured about the nature and extent of his coverage." *Phillips v. State Farm Mut. Auto. Ins. Co.*, 497 S.E.2d 325, 327 (N.C. Ct. App. 1998). Plaintiffs cite *Piles v. Allstate Ins. Co.*, 653 S.E.2d 181 (N. Ct. App. 2007), in support of their argument that an insurance agent can breach a fiduciary duty outside of the limited duties outlined in *Phillips*. However, the *Piles* involved a forged document as part of the procurement of an automobile policy. The Court finds that *Piles* does not extend an insurance agent's fiduciary duty beyond the scope of insurance procurement. Nowhere in Plaintiffs' allegations do they allege that Daniel

5

failed to procure insurance, named the wrong insured in Jeffrey's policy, or gave incorrect advice to Jeffrey about the nature and extent of his coverage. Accordingly, Daniel's status as an insurance agent is insufficient to establish that Daniel owed a general fiduciary duty to either Michelle or Jeffrey at the time Jeffrey changed his beneficiary.

While Daniel's status as their insurance agent does not impose a fiduciary duty under the allegations herein, his familial relationship is another matter. Daniel is correct that a "mere family relationship" is insufficient to establish a confidential or fiduciary relationship. *See Benfield v. Costner*, 313 S.E.2d 203, 205 (N.C. Ct. App. 1984). However, in *Terry v. Terry*, a case involving allegations of a relationship of trust and confidence between two brothers, the North Carolina Supreme Court held that "[a fiduciary relationship] may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." 273 S.E.2d at 678 (quotation omitted). The Court finds that the Amended Complaint plausibly alleges a relationship of trust and confidence between Jeffrey and Daniel and Michelle and that Daniel took advantage of those relationships for his own benefit.

### D. Conversion

"The tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 723 S.E.2d 744, 747 (N.C. 2012) (quotation omitted). Daniel argues that he could not be liable for conversion because Jeffrey was the owner of the policies at issue and Daniel never became the owner. However, the Amended Complaint does allege that

6

Daniel acted in the place of the true owner of the policy, Jeffrey, by changing the beneficiary designations to himself. These allegations are sufficient to state a claim for conversion.

Daniel contends that Michelle cannot state a claim for conversion in her individual capacity because intangible interests such as expectancy interests do not give rise to a claim of conversion, citing *New York Life Ins. Co. v. Nivens*, No. 3:14-CV-00196-GCM, 2014 WL 5760752, at *2 (W.D.N.C. Nov. 5, 2014). However, under North Carolina law, it is well settled that the beneficiary's interest in an insurance policy vests upon the passing of the insured. *See Fid. Bankers Life Ins. Co. v. Dortch*, 348 S.E.2d 794, 797 (N.C. 1986) ("Under a contract granting the power to change beneficiaries, the rights of the designated beneficiary do not vest until the death of the insured."). In addition, Plaintiffs' conversion cause of action incorporates all the preceding allegations of the Complaint, including those alleging that Daniel cashed out Jeffrey and Michelle's mutual fund and kept those proceeds. The Court finds that the Amended Complaint states a plausible claim for conversion.

### D. Unfair and deceptive Trade Practices

The claim of Unfair and Deceptive Trade Practices ("UDTP") is brought by the Estate only. North Carolina General Statute Section 75-1.1 prohibits "unfair or deceptive trade practices in or affecting commerce." Daniel argues that this claim fails because the conduct complained of is not "in or affecting commerce." North Carolina courts disfavor UDTP claims that are not used for their intended purpose. In *Brewster v. Powell Bail Bonding, Inc*., the court noted "[Plaintiff's] claim is part of a regrettable trend in North Carolina business litigation. There exists an impulse to turn every shareholder dispute or disagreement between members of a limited liability company into a [UDTP] claim. In a growing body of case law . . . , our courts 'have recognized [these] disputes for what they truly are: intra-company feuds about internal operations.'" 2018

WL 3603023, at *6 (quoting *Potts v. KEL, LLC*, 2018 WL 1597644, *5 (N.C. Super. Ct. March 27, 2018)); *White v. Thompson*, 691 S.E.2d 676 (N.C. 2010) (holding that actions occurring entirely between the partners of a partnership are not "in or affecting commerce"). This case involves family members fighting over a decedent's life insurance policy, which, if anything, is even less entwined with commerce that the disputes cited above.

The Estate valiantly tries to salvage its claim by arguing that Daniel's conduct "constitute[s] a catastrophic breach of trust to the public at large," has "serious implications for all of Primerica's policy holders," and is a "betrayal to the entire marketplace." (Doc. No. 33, pp. 21-22). Plaintiff's characterization of the impact of Daniel's alleged conduct is grossly overstated. The Court finds that the Plaintiff Estate has failed to state a claim for Unfair and Deceptive Trade Practices under North Carolina law.

### E. Tortious Interference with Contract

This cause of action is brought by both the Estate and Michelle. To state a claim for tortious interference with contract, a plaintiff must allege: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Area Landscaping L.L.C. v. Glaxo-Wellcome, Inc*., 586 S.E.2d 507, 510 (N.C. Ct. App. 2003).

Daniel argues that element number five is missing. Any benefit conferred by the life insurance policies would inure to the beneficiaries, not to the Estate itself. Moreover, any judgment for the policies' proceeds would flow to the beneficiaries outside of the Estate.

Accordingly, the Estate would suffer no damages from tortious interference. The Court agrees and dismisses this claim as the Estate.

Michelle's claim must likewise be dismissed. A claim for tortious interference with a contract requires a valid, enforceable contract between the plaintiff (here, Michelle) and a third person. *See*, *e.g.*, *United Labs., Inc. v. Kuykendall*, 370 S.E.2d 375, 387 (N.C. 1988) (requiring "a valid contract between the plaintiff and a third person"); *Fen-Phen Series 2005-01 v. Farrin*, No. 1:09-CV-479, 2010 WL 1740521, at *4 (M.D.N.C. Apr. 28, 2010) (dismissing tortious interference claim because the plaintiff was not a party to the interfered-with contract). Michelle was not a party to the insurance contracts at issue in this case, nor has she plead a contract with Jeffrey to keep the policies in place.

In paragraph 92 of the Amended Complaint, Michelle alleges that she was a "valid third-party beneficiary of these contracts." The Primerica policy was attached to the original Complaint and is referenced in the Amended Complaint. (Doc. No. 1-3, Doc. No. 29). A review of the policy reveals that the beneficiary designation was solely within Jeffrey's purview and could be changed. There is no allegation that Jeffrey and/or Michelle bargained for an irrevocable insurance policy in her favor, as they could have. Michelle does not allege anything different regarding the Smarte Carte policy nor has she sued the issuing insurance company; by inference, Jeffrey had the right to change beneficiary designations on that policy too. She may have hoped she would be the beneficiary, but she lacked that contractual right.

**F. Unjust Enrichment**

There is an established rule in North Carolina that provides that "where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefore." *Atl. Coast*

9

*Line R.R. Co. v. State Highway Comm'n*, 150 S.E.2d 70, 73 (N.C. 1966). The claims here are clearly based upon express contracts — the life insurance contracts. There is no allegation that either insurance policy is invalid, unenforceable, unconscionable, or anything else creating a cloud on the policies. Therefore, there is no basis for either Plaintiff to have an unjust enrichment claim.

### G. Punitive Damages

Daniel argues that Plaintiffs cannot maintain a punitive damages claim because their other claims are subject to dismissal. While the Court is indeed dismissing some of the Plaintiffs' claims, certain claims do remain. Based upon the allegations in the Amended Complaint, the Court will allow the punitive damages claim against Daniel to proceed.

### H. Undue Influence and Lack of Capacity

Both Michelle and the Estate bring these claims. However, it appears the Michelle does not have standing in her individual capacity to bring this claim. "Undue influence is defined as 'a fraudulent influence over the mind and will of another to the extent that the professed action is not freely done but is in truth the act of the one who procures the result.'" *Griffin v. Baucom*, 328 S.E.2d 38, 41 (N.C. Ct. App. 1985) (quoting *Estate of Loftin and Loftin v. Loftin*, 208 S.E.2d 670, 674–75 (N.C. 1974)). Michelle does not allege that she was unduly influenced, but rather that she should be the beneficiary of a revocable policy that her estranged husband owned. (Amd. Compl. ¶¶ 117-121). The North Carolina Supreme Court has stated "actions to impeach transfers of personalty made by a decedent in his lifetime must be brought by his personal representative, and not by his legatees or distributes." *Holt v. Holt*, 61 S.E.2d 448, 452 (N.C. 1950). Michelle in her individual capacity is not Jeffrey's personal representative, and, therefore,

she does not have standing on this issue. The same reasoning applies to the lack of capacity claim brought by Michelle in her individual capacity.

The Estate, however, does have standing to bring these claims. The Amended Complaint sufficiently alleges a plausible claim that Daniel unduly influenced his brother during a time that he was suffering from a mental illness, and that Jeffrey lacked the capacity to make the beneficiary changes.

IT IS THEREFORE ORDERED that Defendant Daniel Fairchild's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART as follows:

1. Plaintiffs' claims for Fraud, Unfair and Deceptive Trade Practices, Tortious Interference with Contract, and Unjust Enrichment are hereby DISMISSED; and

2. Plaintiff Michelle Fairchild's claims for Undue Influence and Lack of Capacity are dismissed as she lacks standing to bring those claims in her individual capacity.

Signed: September 10, 2020

Graham C. Mullen
United States District Judge